IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HOUSING AUTHORITY OF THE CITY OF SLIDELL, | § § § | |
| Plaintiff, | § | No.: 19-1583 C |
| VERSUS | § § | |
| THE UNITED STATES OF AMERICA | § § | |
| Defendant. | § § | |

------------------------------------------------------------------------

**PLAINTIFF'S ORIGINAL COMPLAINT**

The Housing Authority of the City of Slidell ("Plaintiff" or "HACS) files this Original Complaint against the United States of America, acting through the Department of Housing and Urban Development ("Defendant" or "HUD"), and, in support thereof, would respectfully show as follows:

**I.   SUMMARY**

The Annual Contributions Contract ("ACC") entered into between HACS and HUD is an agreement whereby HUD is to provide funding to HACS, which in turn allows HACS to successfully run the housing authority for the citizens of the City of Slidell.  Due to no fault of its own, Plaintiff received a low Public Housing Assessment System ("PHAS") score from the Real Estate Assessment Center ("REAC") for fiscal year 2017.  This low score placed HACS on "*Troubled*" status.  Plaintiff appealed the score in August 2017 and subsequently won the appeal, which removed the HACS from "*Troubled*" status resulting in a PHAS score of eighty-one (81) out of a possible score of one-hundred (100).  Upon learning that HACS was going to be removed from "*Troubled*" status HUD had no grounds for zero-dollar threshold cash management. However, in August 2017, HUD notified HACS they would be on zero-dollar threshold as a result of findings outlined in the 2017 independent audit.  The independent audit report reflected an

1

Unmodified Opinion. It was on that basis that HUD notified the HACS that it was on zero-dollar threshold and had to comply with burdensome criteria, both from human resources and associated cost, without benefit of subsidy. HACS was not given the process to appeal the arbitrary action of HUD. Furthermore, due to HACS' placement on the "*zero-dollar threshold*," HUD is withholding over $1,700,000.00 which it owes to the Plaintiff in accordance with the terms of the Annual Contributions Contract. HUD has continuously acted in an arbitrary and capricious manner towards HACS for a period of time that exceeds two years, and this poor conduct has actively contributed to the Plaintiff's financial distress with a potential default should this situation not be rectified. Such a default would displace hundreds of persons who reside within housing operated by the Plaintiff.

## II. JURISDICTION

The Court has jurisdiction over this action under 28 U.S.C. § 1491(a)(1) because Plaintiff's claims are founded on an express contract between Plaintiff and the United States.

## III. PARTIES

As defined in Section 3 of the United States Housing Act of 1937, 42 U.S.C. § 1437a(b)(6)(A), Plaintiff is a "*State, county, municipality, or other governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of public housing*." Plaintiff is a party to an ACC with HUD under which it receives funds annually from HUD for the purpose of administering HUD's Public Housing program. HUD is an agency of the United States. As an agency of the United States, HUD's actions are imputed to the United States. The United States, acting through HUD, is an express party to the contracts at issue in this action.

## IV.    FACTS

1.

The Plaintiff, Housing Authority of the City of Slidell, is a public housing agency as defined by the United States Housing Act of 1937. A public housing agency (PHA) is a State or unit of local government or an agency or instrumentality created by a State or unit of local government for the purpose of administering affordable housing programs, including the Public Housing program of the United States Department of Housing and Urban Development (HUD). See U.S.C § 1437 a(b)(6)(A).

2.

An Annual Contributions Contract (ACC) "*is a contract prescribed by HUD for loans and contributions, which may be in the form of [an] operating subsidy, whereby HUD agrees to provide financial assistance and the PHA agrees to comply with HUD requirements for the development and operation of its public housing projects*." 24 C.F.R. § 900.115 (2017).

3.

In 1984, HACS entered into with the United States acting through HUD an ACC by executing a Form HUD-53012, bearing number FW-1128.

4.

Under the ACC between Plaintiff and HUD, HUD is to provide contractual subsidy to HACS, which in turn allows HACS to successfully run the housing authority for the citizens of the City of Slidell in accordance with HUD regulations in Title 24 of the Code of Federal Regulations (Title 24).

5.

In 2003, HACS was declared a "*Troubled*" Agency.   However, after a change in management in December 2010, HACS new management and the Board were able to be removed from the "*Troubled*" status in less than 18 months of diligent work, HACS was no longer identified as "*Troubled*."  Plaintiff was able to achieve this monumental success through the effective use of capital and operating funds.

6.

HACS experienced another devastating blow in January 2016 when a computer crash wiped out the entirety of its accounting program.  HACS informed the New Orleans Field and Regional HUD of this crash.  Plaintiff further informed the New Orleans Field and Regional HUD of the logistical nightmare which Plaintiff faced in reconstructing all of its financial records.

7.

Even though HACS had informed the local HUD office of the computer crash, the Real Estate Assessment Center ("REAC") gave Plaintiff a Public Housing Assessment System ("PHAS") rating of fifty-two (52) out of one hundred (100).  The reason for such a low score was due to a twenty-five (25) point reduction from the late submitted unaudited financial report, which as previously stated, was through no fault of the Plaintiff.  As a result of this score, HACS was once again placed on the "*Troubled*" list.  It should be noted that the REAC report states that if the unaudited financial report had been timely submitted, HACS would not have been placed on the "*Troubled*" list. Plaintiff successfully appealed the score to Washington and on September 20, 2017 was officially removed from "*Troubled*" status.  This elevated Plaintiff from "*Troubled*" to "*Small PHA Deregulation*." Status.

8.

In August of 2017, the New Orleans Field and Regional HUD informed HACS that due to findings in the 2017 independent auditor's report, HUD placed HACS on "*zero-dollar threshold*" spending beginning August 27, 2017 of capital funds along subsidy to be placed on auto review. As such HACS would not be able to draw funds through Line of Credit Control System (LOCCS) unless HUD's unreasonable and burdensome demands were met. By preventing HACS' access to funds earned, HUD was imposing a cash management system on Plaintiff which severely undermined its efficiency and operation. The "*zero-dollar*" threshold prohibits HACS from using any funds without the prior approval of the New Orleans Field and Regional HUD.

9.

In September of 2017, REAC issued a PHAS score of eighty-one (81) out of a possible one hundred (100) to HACS. In July 2018, HUD issued a PHAS score of eighty-six (86). This score raised Plaintiff's status to "*Standard*." This was, once again, through the diligence of HACS and its staff.

10.

Despite all of this, the New Orleans Field and Regional HUD refuses to acknowledge the updated PHAS score. HUD continues to burden HACS with the burden of "*zero-dollar threshold*" status.

V.  **HUD ACTED IN AN ARBITRARY AND CAPRICIOUS MANNER AND BREACHED THE ANNUAL CONTRIBUTIONS CONTRACT**

11.

Plaintiff re-allege paragraphs 1-10.

12.

Despite HACS' conformity with the requirements of the "zero-dollar threshold" by submitting requests to the New Orleans Field and Regional HUD for approval for any monetary expenditures. This includes payroll, bills, and other legal obligations. Despite HUD's insistence that these requests be made to the New Orleans Field and Regional HUD, these requests are often denied without plausible reasons. These requests are extremely time consuming as well as costly in time and funds as they must comply with Obligation Submission Review Requirements for each and every invoice along with extensive documentation no matter how small or repetitive the invoice may be. Furthermore, the New Orleans Field and Regional HUD has prohibited HACS from hiring a staff accountant to aid plaintiff in this burdensome process.

13.

Additionally, Plaintiff has been the subject of four separate audits conducted in 2017. These audits were performed by HUD on two separate occasions, the Louisiana Legislative Auditor, and one by an independent auditor. All of these audits yielded no finding of fraud or misappropriation. These audits were unduly burdensome on HACS as they are not only costly, but they also reduced Plaintiff's ability to oversee its day-to-day operations.

14

The New Orleans Field and Regional HUD has continuously and systematically singled out HACS in a way which impeded its ability to effectively serve its prime directive, namely to house its tenants. The unnecessary and burdensome requirements which have been placed upon HACS only serve to impede HACS' ability to provide the necessary and important services which it renders to its tenants. The purpose of a housing authority such as HACS is to provide housing

for low-income families and elderly residents and not to be overwhelmed by the bureaucratic nightmare which HUD is imposing upon the Plaintiff.

15.

Furthermore, HUD continuously places funds owed to HACS into LOCCS, which HUD has prevented HACS access. . To date, the funds being withheld exceed $1,700,000.00.

16.

In summary, despite the change in PHAS score, and despite the successful audits conducted on HACS by HUD, the Louisiana Legislative Auditor, and one by an independent auditor, all of which yielded no finding of fraud or misappropriation, the New Orleans Field and Regional HUD office continue to maintain HACS on the "zero" dollar threshold and withhold over $1,700,000.00 owed to HACS.

## VI.   REQUEST FOR ATTORNEY'S FEES

17.

Plaintiff is entitled upon timely motion to recover its fees and other expenses, including attorney's fees, pursuant to 28 U.S.C. §2412(d)(1)(A).

## VII.   PRAYER FOR RELIEF

Plaintiff, The Housing Authority of the City of Slidell, respectfully requests that, upon final hearing hereof, it have judgment of and against the Defendant United States of America, acting through the Department of Housing and Urban Development, for damages requested herein, including but not limited to, judgment as follows:

(a)   Find that HUD breached the Annual Contributions Contract;

(b)   Find that HUD acted in an arbitrary and capricious manner towards Plaintiff;

(c)   Remove HACS from the "*zero-dollar threshold*" on which it has been unjustly placed for a period exceed two years;

(d)  Order the release of the over $1,700,000.00 which is owed to HACS and being withheld by HUD;

(e)  Remove HACS from the jurisdiction of the New Orleans Field and Regional HUD office and have it placed under a different jurisdiction;

(f)  Award Plaintiff the costs and expenses of this Action, including attorney fees pursuant to 28 U.S.C. § 2412; and

(g)  Award the Plaintiff any other relief that is proper.

Dated: October 10, 2019.

          Respectfully submitted,

          **CHEHARDY, SHERMAN, WILLIAMS MURRAY, RECILE, STAKELUM, & HAYES, LLP**

          */s/ James M. Williams*
          JAMES M. WILLIAMS, BAR NO. 26141
          INEMESIT U. O'BOYLE, BAR NO. 30007
          PATRICK R. FOLLETTE, BAR NO. 34547
          One Galleria Boulevard, Suite 1100
          Metairie, Louisiana 70001
          Telephone:   (504) 833-5600
          Facsimile:    (504) 833-8080
          *ATTORNEYS FOR PLAINTIFF, HOUSING AUTHORITY OF THE CITY OF SLIDELL*